USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1732 UNITED STATES, Appellee, v. ROBERTO ROSALES, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Lydia Lizarribar-Masini for appellant. _______________________ Miguel A. Pereira, Assistant United States Attorney, with __________________ whom Guillermo Gil, United States Attorney, and Jose A. Quiles- _____________ _______________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ March 31, 1994 ____________________ BOWNES, Senior Circuit Judge. Defendant-appellant BOWNES, Senior Circuit Judge. ____________________ Roberto Rosales appeals his conviction for abusive sexual contact in violation of 18 U.S.C. 2244(a)(1).1 He argues that the district court abused its discretion by admitting explanatory expert witness testimony, and that remarks contained in the prosecutor's closing argument deprived him of a fair trial. In addition, defendant challenges his sentence on the ground that the district court's upward departure from the Sentencing Guidelines was unreasonable. We affirm defendant's conviction, but vacate his sentence and remand the case for resentencing. I. I. BACKGROUND BACKGROUND __________ Defendant is a former elementary school teacher at Antilles Elementary School, located at Fort Buchanan, Puerto Rico. The school is administered by the United States Navy. ____________________ 1. Section 2244(a)(1) provides in pertinent part: Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in or causes sexual contact with or by another person, if to do so would violate . . . (1) section 2241 of the title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both. 18 U.S.C. 2244(a)(1). Section 2241(c) makes it a federal crime to engage, or attempt to engage, in a sexual act with a person under the age of twelve, in the territorial jurisdiction of the United States. -2- 2 Complaints of inappropriate touching led to an investigation of defendant, which resulted in an indictment charging him with six counts of abusive sexual contact involving three minor victims.2 The charges arose from allegations that defendant had touched, kissed and rubbed against three of his former students. Each victim was a student of defendant for one school year, and all three testified that numerous incidents of sexual contact occurred throughout their time in the third grade. The government also presented the expert testimony of Dr. Nancy Slicner, a child psychologist, who testified about the general behavioral characteristics exhibited by victims of child sexual abuse. The jury found defendant guilty as charged. The trial judge sentenced defendant to 120 months imprisonment on each count, with the sentences to run concurrently. This appeal ensued. II. II. DISCUSSION DISCUSSION __________ A. Expert Testimony A. Expert Testimony ________________ Defendant first argues that the district court erroneously admitted the expert testimony of Dr. Slicner, a child psychologist who testified for the government. More ____________________ 2. Although defendant was originally charged in a six count indictment, two counts were voluntarily dismissed by the government prior to trial. -3- 3 precisely, defendant argues that the expert testimony should have been excluded because it improperly bolstered the testimony of the minor victims, and therefore its probative value was outweighed by its prejudicial effect. At trial, however, no objection was made to the admissibility of Dr. Slicner's testimony. Therefore, any error in the admission of the evidence was not preserved for appeal. See United ___ ______ States v. Castro-Lara, 970 F.2d 976, 980 (1st Cir. 1992), ______ ___________ cert. denied, 113 S. Ct. 2935 (1993); United States v. _____ ______ ______________ Serrano, 870 F.2d 1, 10 n.9 (1st Cir. 1989); see also Fed. R. _______ ___ ____ Evid. 103(a)(1). Our standard of review under the circumstances is "plain error," see United States v. ___ ______________ Figueroa, 976 F.2d 1446, 1453 (1st Cir. 1992), cert. denied, ________ _____ ______ 113 S. Ct. 1346 (1993), and we will reverse only if the error "`seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceeding[].'" United States _____________ v. Geer, 923 F.2d 892, 896 (1st Cir. 1991) (quoting United ____ ______ States v. Young, 470 U.S. 1, 15 (1985) (internal quotation ______ _____ marks and citation omitted)); see United States v. Olivio- ___ _____________ _______ Infante, 938 F.2d 1406, 1411 (1st Cir. 1991) (under "plain _______ error" review we will reverse only where a miscarriage of justice has occurred). Defendant focuses his argument on Dr. Slicner's testimony that the way in which the minor victims discussed the incidents of sexual abuse with her was consistent with -4- 4 the manner generally exhibited by children who have been sexually abused or molested. Dr. Slicner explained that children generally "tend to be reluctant, they tend to be embarrassed, uncomfortable, ashamed of what happened. They're very uncomfortable giving details. I see a lot of that. And I saw that in these children." Defendant relies on the Ninth Circuit's decision in United States v. Binder, 769 F.2d 595 (9th Cir. 1985), where ______________ ______ the court held that the district court erroneously admitted expert testimony addressed directly to the credibility of the abused children. The court found reversible error because, "[t]he testimony of the experts . . . was not limited to references to psychological literature or experience or to a discussion of a class of victims generally. Rather the experts testified that these particular children in this particular case could be believed. The jury in effect was impermissibly being asked to accept an expert's determination that these particular witnesses were truthful." United States v. Antone, 981 F.2d 1059, 1062 (9th Cir. 1992) _____________ ______ (quoting Binder, 769 F.2d at 602). According to the court, ______ the effect of the experts' testimony was to "bolster the children's story and to usurp the jury's fact-finding function." Id. In Binder, however, the court conducted a ___ ______ -5- 5 "harmless error" review, a standard far less demanding than that of "plain error."3 Although trial judges are afforded significant leeway in determining whether otherwise admissible evidence is unfairly prejudicial under Fed. R. Evid. 403, see United ___ ______ States v. Spinosa, 982 F.2d 620, 628-29 (1st Cir. 1992), we ______ _______ have recognized that "proffered expert testimony [c]ould create a substantial danger of undue prejudice . . . because of its aura of special reliability and trustworthiness." United States v. Fosher, 590 F.2d 381, 383 (1st Cir. 1979) ______________ ______ (collecting cases); accord United States v. Boney, 977 F.2d ______ _____________ _____ 624, 631 (D.C. Cir. 1992). We agree with defendant that Dr. Slicner's testimony sent an implicit message to the jury that the children had testified truthfully, and this might therefore have interfered with the jury's function as the sole assessor of witness credibility. But, even assuming (without deciding) that the district court improperly calibrated its scales in balancing the probative value of this testimony ____________________ 3. Were we reviewing the objectionable portion of Dr. Slicner's testimony for harmless error, we would have to decide whether "it can be said `with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" United States v. Ladd, _____________ ____ 885 F.2d 954, 957 (1st Cir. 1989) (quoting Kotteakos v. _________ United States, 328 U.S. 750 (1946)). _____________ -6- 6 against its prejudice to defendant,4 any error was not "plain." Our conclusion is based on two factors. First, defendant offered the testimony of its own expert, a child psychiatrist, who sought to undermine the credibility of Dr. Slicner. According to defendant's expert, the interviews conducted by Dr. Slicner of the children were too short to allow Dr. Slicner to assess their stories accurately. In addition, defendant's expert stated that the children's trial testimony, which she listened to attentively, was not consistent with testimony that one would expect from victims of child abuse. Second, the district court instructed the jury as follows: During the trial you heard the testimony . . . of Dr. Nancy Slicner who was presented by the government . . . [a]nd we also heard the testimony of Dr. Martinez Lugo presented by the defendant . . . . If scientific or technical or other specialized knowledge may assist[] the juror in understand[ing] the evidence or determining facts in issue, a witness qualified as an expert . . . may testify before the jury and state an opinion concerning such matters. Now merely ___________ because an expert witness has expressed _________________________________________ an opinion does not mean, however, that _________________________________________ you as jurors must accept this opinion. _______________________________________ ____________________ 4. Under prevailing law, relevant evidence, such as Dr. Slicner's testimony, is admissible unless its probative value is "substantially outweighed" by the risk of unfair prejudice, confusion, or waste of time. United States v. _____________ Argencourt, 996 F.2d 1300, 1305 (1st Cir 1993); Fed. R. Evid. __________ 403. -7- 7 The same as with any other witness. It is up to you to decide whether you _________________________________________ believe the testimony of the expert and _________________________________________ choose to rely upon it. _______________________ Trial Transcript, Vol. XIV at pp. 864-65 (emphasis added). Not only was the jury presented with expert testimony directly contradicting the objectionable testimony offered by Dr. Slicner, but, the court expressly instructed the jurors that they were free to reject the opinions offered by the experts. Under the circumstances, we are not persuaded that Dr. Slicner's testimony was so prejudicial to defendant "as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." Geer, 923 ____ F.2d at 897 (internal quotation marks and citation omitted). B. Improper Argument B. Improper Argument _________________ Defendant next contends that comments by the prosecutor to the jury during closing arguments deprived him of a fair trial. According to defendant, the prosecutor impermissibly vouched for the credibility of the government's witnesses in his response to defense counsel's argument that the FBI had fabricated evidence. The prosecutor stated: Then they are also implying here, the defense is implying that there is some kind of conspiracy, that the FBI wanted to fabricate a case against Mr. Rosales, a school teacher at Antilles Elementary School. Like the FBI would have a special interest in this man. But for you to believe that story, you [w]ould also have to believe that the United States, Mr. Pereira [the other AUSA] and myself are part of that conspiracy. And -8- 8 that we would blend [sic] ourselves to do something such as improper and unethical conduct. Defense counsel objected to this remark. The court sustained the objection, and warned the prosecutor that "[t]he evidence has to do with the participation of the FBI agents [in gathering evidence]," and that he should not go beyond the evidence. No curative instruction was requested by the defense, and none was given. Moreover, defendant did not move for a mistrial. When a prosecutor places the credibility of counsel at issue, the advantage lies solidly with the government, and thus, prosecutors are prohibited from doing so. See United ___ ______ States v. Cresta, 825 F.2d 538, 555 (1st Cir. 1987), cert. ______ ______ _____ denied, 486 U.S. 1042 (1988); see also United States v. ______ ___ ____ ______________ Nickens, 955 F.2d 112, 121 (1st Cir.) (prosecutor may not _______ express personal assurances about conclusions to be drawn from the evidence), cert. denied, 113 S. Ct. 108 (1992); _____ ______ United States v. Rodriguez-Estrada, 877 F.2d 153, 158 (1st _____________ _________________ Cir. 1989) (same); United States v. Mejia-Lozano, 829 F.2d _____________ ____________ 268, 273 (1st Cir. 1987) (same). Because this is precisely what the prosecutor in this case did, there is no doubt that his argument was improper. And, the government concedes this. Nevertheless, a new trial is not warranted. The question is whether the prosecutor's argument was sufficiently prejudicial to warrant a new trial under the -9- 9 circumstances. This requires that we engage in the functional equivalent of the familiar "harmless error" analysis. See United States v. Brown, 938 F.2d 1482, 1489 ___ _____________ _____ (1st Cir.), cert. denied, 112 S. Ct. 611 (1991); Rodriguez- _____ ______ __________ Estrada, 877 F.2d at 159; Fed. R. Crim. P. 52(a). In _______ determining whether the prosecutor's remark was harmless, "we consider a range of factors, starting with the nature of the prosecutor's (mis)conduct and ending with the unavoidable bottom line: whether we deem it likely, or not, that any prejudice affected the outcome of the case." Rodriguez- __________ Estrada, 877 F.2d at 159. In conducting this analysis, we _______ evaluate the prosecutor's comments in the context of the trial as a whole, not in isolation. See id.; see also ___ ___ ___ ____ Nickens, 955 F.2d at 121. While we have no doubt that the _______ prosecutor's argument was wholly inappropriate, which is conceded by the government on appeal, reversal is not warranted for the following reasons. First, the prosecutor did not repeatedly place his credibility in issue, or extend his argument beyond the scope of the evidence. His improper statement was an isolated one and, as such, was less likely to impact the outcome of the case. See Brown, 938 F.2d at 1489; Mejia-Lozano, 829 F.2d at ___ _____ ____________ 274. Second, the issue of the credibility of the government's witnesses, particularly the children, was fully developed at trial, and the jury was instructed that they -10- 10 alone were charged with judging the credibility of each witness. This diminishes any likelihood that the jury was swayed by the prosecutor's "vouching." See Cresta, 825 F.2d ___ ______ at 556. Next, although the court did not explicitly instruct the jury to disregard the prosecutor's improper remark, it sustained defendant's objection and immediately warned the prosecutor (in the presence of the jury) that defendant's allegations concerned misconduct only by the FBI, and that his argument should be limited to the evidence. Finally, the trial court repeatedly instructed the jury as to the proper role of argument in the case. Prior to counsel's opening statements, again before their summations, and once again in its charge, the court explained to the jury that the attorney's arguments were not evidence, and that only the testimony of the witnesses and admitted documents were evidence. See, e.g., Brown, 938 F.2d at 1489 ___ ____ _____ (instruction that arguments of counsel are not evidence can remove prejudicial taint of improper argument); United States _____________ v. de Leon Davis, 914 F.2d 340, 345 (1st Cir. 1990) (same). _____________ Although there are circumstances where such an instruction may not be sufficient given the nature of the prosecutor's argument, see Arrieta-Agressot v. United States, 3 F.3d 525, ___ ________________ _____________ 529 (1st Cir. 1993) (court's instruction that arguments of counsel are not evidence not enough to counteract prejudice -11- 11 from emotionally charged summation where "the danger was not so much that the jury would consider the prosecutor's remarks to be `evidence.' Rather, the threat was that the prosecutor's remarks would excite the jury, invite a partisan response, and distract its attention from [the merits of the case]."), such circumstances are not present here. We have reviewed the transcripts of the trial testimony in this case, in addition to the briefs, and are convinced that the objectionable remark, viewed in context, and in light of the court's instructions to the jury, did not affect the outcome of the trial. Defendant's trial lasted for ten days, and each party was afforded one hour in which to deliver its summation. It is highly unlikely that the jury's verdict could have been the result of this brief remark by the prosecutor. We conclude that the verdict was based upon the testimony, and the jury's belief that the government's witnesses were credible. Defendant also argues that the prosecutor, in other portions of his summation, improperly vouched for the credibility of government witnesses and commented on facts not in evidence. We have carefully reviewed the prosecutor's closing argument and rebuttal, and find that these statements were not improper. The allegedly improper statements are little more than words and phrases taken out of context from the prosecutor's argument. When the allegedly improper -12- 12 statements are read in full and in context, we can find nothing objectionable about them. Furthermore, because no contemporaneous objection was made, our review is only for plain error. Arrieta-Agressot, 3 F.3d at 528; United States ________________ ______________ v. Smith, 982 F.2d 681, 682 (1st Cir. 1993); Nickens, 955 _____ _______ F.2d at 121. Under the "plain error" standard, we could not order a new trial based on these remarks. See United States ___ ______________ v. Soto-Alvarez, 958 F.2d 473, 477 (1st Cir.) (improper ____________ argument constitutes plain error only if it "`undermine[s] the fundamental fairness of the trial and contribute[s] to a miscarriage of justice.'" (quoting United States v. Soto- ______________ _____ Alvarez, 876 F.2d 209, 233 (1st Cir. 1989), cert. denied, 493 _______ _____ ______ U.S. 1030 (1990))), cert. denied, 113 S. Ct. 221 (1992). _____ ______ C. The Upward Departure C. The Upward Departure ____________________ In sentencing defendant, the district court calculated a Sentencing Guidelines offense level of 22 as follows: the "abusive sexual contact" base offense level of ten, U.S.S.G 2A3.4(a)(3); plus six levels because none of the victims had attained the age of twelve, id. ___ 2A3.4(b)(1); plus four levels as a multiple count adjustment, id. 3D1.4; plus two levels based on defendant's abuse of a ___ position of trust in a manner that facilitated commission of the offense, id. 3B1.3. The court then placed the ___ defendant into Criminal History Category I. These calculations produced a Guideline Sentence range of forty-one -13- 13 to fifty-one months imprisonment. Id. ch. 5, part A ___ (Sentencing Table). The court then departed upward pursuant to 5K2.0 of the Sentencing Guidelines, effectively increasing defendant's offense level to 31, and imposed a prison term of 120 months.5 Defendant contends that the degree of the upward departure was unreasonable. 18 U.S.C. 3742(e)(3). In United States v. Rivera, 994 F.2d 942 (1st Cir. _____________ ______ 1993), we analyzed the departure powers of sentencing courts under the Guidelines, and recognized that cases which fall outside of the "heartland," i.e., the "set of typical cases _____ embodying the conduct that each guideline describes," are candidates for departure. Id. at 947. ___ At defendant's sentencing the district court found, there are aggravating factors in this case. . . . [T]hat defendant Rosales repeatedly engaged in similar criminal behavior as . . . represented by the counts of the convictions with the minors named in the indictment, conduct for which he was not charged. The evidence ____________________ 5. Section 5K2.0 provides that the sentencing court may impose a sentence outside of the range established by the applicable guideline if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described. U.S.S.G. 5K2.0, p.s. (quoting 18 U.S.C. 3553(b)). -14- 14 at trial showed that defendant engaged in uncharged incidents of abusive sexual contact with minor RG on five occasions, with minor MQ on several occasions and minor VT almost on a daily basis during one school year. The district court concluded that, "based on multiplicity of incidents of abusive sexual contact that the defendant Roberto Rosales engaged [in] with minors named in the indictment, the Court departs to an offense level of thirty- one." The court went on to state that the Guidelines range for offense level thirty-one, where the defendant had a criminal history rating of I, was 120-135 months. This was incorrect. The correct range is 108-135 months. It is unclear whether the court sentenced defendant to 120 months on each count because (1) it meant to sentence defendant at the low end of the incorrect range, or (2) because it intended to impose the statutory maximum for each count. Thus, defendant might very well have been prejudiced by the court's failure to identify the guideline range the court had in mind. But, because we vacate defendant's sentence on other grounds, see infra pp. 15-18, we need not pursue this ___ _____ line of thought. We review a sentencing court's decision to depart by examining "(1) whether the reasons the court gave for departing are the sort that might permit a departure in an appropriate case; (2) whether the record supports a finding -15- 15 of facts demonstrating the existence of such reasons; and (3) whether, given the reasons, the degree of departure [from about four years to ten] is reasonable." United States v. _____________ Mendez-Colon, No. 93-1346, slip op. at 3 (1st Cir. Jan. 19, ____________ 1994); see United States v. Diaz-Villafane, 874 F.2d 43, 49 ___ ______________ ______________ (1st Cir.), cert. denied, 493 U.S. 862 (1989); Rivera, 994 _____ ______ ______ F.2d at 950. With respect to the first prong of our analysis, we have recognized that "[s]ome district court decisions that a particular case is unusual enough to warrant departure reflect sentencing experience of a sort one typically finds in district, not appellate, courts." United States v. Doe, ______________ ___ No. 92-2331, slip op. at 5 (1st Cir. Mar. 18, 1994). Thus, we review the district court's determination that a case is unusual, and therefore warrants departure, "with full awareness of, and respect for, the trier's superior feel for the case." United States v. Legarda, No. 93-1448, slip op. ______________ _______ at 10 (1st Cir. Mar. 3, 1994) (quoting Rivera, 994 F.2d at ______ 952 (citations and internal quotation marks omitted)). On the other hand, "where departure decisions reflect a determination of the purpose of, or an interpretation of the language in, a guideline or statute," plenary review is appropriate. Doe, slip op. at 5. In the present case, ___ defendant argues merely that, because the indictment covers the entire time period during which defendant's multiple acts -16- 16 allegedly occurred, an upward departure cannot be based upon these acts. This contention is without merit. Under this indictment, defendant's offense level would remain the same regardless of whether he engaged in four or four hundred acts of misconduct. The pivotal question is whether the persistent and repetitive nature of defendant's conduct, charged or uncharged, is an appropriate ground for departure. In other words, is this case "unusual" relative to the garden variety sex offender case? Here, defendant has not challenged the district court's determination that his case was outside of the "heartland," and therefore worthy of an upward departure. Given the respect that we extend to a sentencing court's determination as to whether a given circumstance makes -17- 17 a case "unusual," see Doe, slip op. at 5; Rivera, 994 F.2d at ___ ___ ______ 952, we do not believe that the district court erred in its decision to depart from the Guidelines. As for the second part of our review, the record provides an ample basis for the district court's conclusion that defendant engaged in multiple acts of misconduct over a prolonged period of time. The frequent and continuous nature of defendant's conduct is set out in the Pre-Sentence Report. Because no objection was lodged with respect to the PSR's contents, these facts could be accepted as true and accurate. See United States v. Ramirez, 11 F.3d 10, 14 (1st Cir. 1993); ___ _____________ _______ United States v. Citro, 938 F.2d 1431, 1445 (1st Cir. 1991), ______________ _____ cert. denied, 112 S. Ct. 902 (1992) and 112 S. Ct. 1997 _____ ______ (1992). Thus, the district court's finding of circumstances supporting a departure was not clearly erroneous. See United ___ ______ States v. Mendez-Colon, No. 93-1346, slip op. at 5 (1st Cir. ______ ____________ Jan. 19, 1994). Finally, we must determine whether the extent of the court's upward departure was reasonable. See Doe, slip ___ ___ op. at 20; 18 U.S.C. 3742(e)(3) (length of sentence imposed must be reviewed for its "reasonableness"). In examining the reasonableness of a departure, we must consider, inter alia, _____ ____ "the reasons for the imposition of the particular sentence, as -18- 18 stated by the district court . . . ." 18 U.S.C. 3742(e)(3)(B). Here the district court articulated the grounds for its upward departure, and then departed upward by nine offense levels, without explaining its choice of this particular figure. Although sentencing courts have substantial "leeway" with respect to the "degree" of a departure, see Doe, slip op. at 20-21, Rivera, 994 F.2d at ___ ___ ______ 950, this freedom does not relieve a sentencing court from explaining its ultimate decision of how far to depart. See ___ 18 U.S.C. 3553(c)(2) (sentencing court must state "specific reason[s]" for imposing a "particular sentence" outside of the guideline range); United States v. Ocasio, 914 F.2d 330, _____________ ______ 336 (1st Cir. 1990) (Generally, a sentencing judge must articulate not only his or her reason for departing . . . but must also offer a rationale for the degree of departure."); see also United States v. Kelly, 1 F.3d 1137, 1144 (10th Cir. ___ ____ _____________ _____ 1993) ("a district court must specifically articulate reasons for the degree of departure. Merely explaining why a departure was made does not fulfill the separate requirement of stating the reasons for imposing the particular sentence." (citations and internal quotations omitted)). Absent such an explanation, we cannot assess the reasonableness of the court's nine-level upward departure. Accordingly, -19- 19 defendant's sentence is vacated, and we remand the case for resentencing.6 So ordered. So ordered. __________ ____________________ 6. Given our ruling, we need not reach defendant's contention that his sentence must be vacated because he was not afforded a reasonable opportunity to review various addenda to the Pre-sentence Report prior to sentencing. -20- 20