# United States Court of Appeals
## For the First Circuit

No. 12-1103

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL OCASIO-CANCEL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Howard, Selya and Lipez,
Circuit Judges.

Nereida Meléndez Rivera and Meléndez Torres Law PSC on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

July 19, 2013

**SELYA, Circuit Judge.** After accepting his guilty plea, the district court sentenced defendant-appellant Angel Ocasio-Cancel to serve 87 months in prison. In his ensuing appeal, the defendant asseverates that his guilty plea was neither voluntary nor knowing and, in any event, the district court's sentencing methodology was flawed. After careful consideration of this asseverational array, we affirm both the defendant's conviction and his sentence.

Because this appeal follows a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. See United States v. Calderón-Pacheco, 564 F.3d 55, 56 (1st Cir. 2009); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In July of 2010, a federal grand jury sitting in the District of Puerto Rico charged a multitude of persons (including the defendant) with participation in a widespread drug-trafficking conspiracy. The government alleged that, as part of the charged conspiracy, the defendant acted as a seller and distributed narcotics at sundry drug points within public housing projects.

Shortly before his scheduled trial, the defendant opted to plead guilty to the conspiracy charge. See 21 U.S.C. §§ 841(a)(1), 846, 860. The government and the defendant executed a nonbinding plea agreement. See Fed. R. Crim. P. 11(c)(1)(A)-(B).

-2-

The district court accepted the change of plea and ordered the preparation of a PSI Report.

The guideline calculation, incorporated in the plea agreement and reiterated in the PSI Report, started with a stipulated base offense level (26); added two levels for proximity to a protected location, see USSG §2D1.2(a)(1); subtracted three levels for acceptance of responsibility, see USSG §3E1.1; and settled upon a total offense level of 25. The plea agreement was silent as to the defendant's Criminal History Category (CHC). Filling this void, the PSI Report noted that in 2006 a Puerto Rico court had sentenced the defendant to four years of probation for violations of the Controlled Substances Act of Puerto Rico, see P.R. Laws Ann. tit. 24, § 2406, and that in 2011 the court had revoked his probation and sentenced him to serve a four-year term of imprisonment. Based on this information and the fact that the defendant had committed the offense of conviction while on escape status, the PSI Report recommended placing the defendant in CHC III. The defendant's total offense level, combined with his CHC, yielded a guideline sentencing range (GSR) of 70-87 months.

At the disposition hearing, the guideline calculations limned in the PSI Report went unchallenged. In mitigation, defense counsel urged the district court to take into account the fact that the defendant was already facing a four-year sentence in the local courts. The district court nonetheless imposed a top-of-the-range

sentence — 87 months — to run consecutively to the undischarged local sentence. This timely appeal followed.

To begin, we think it appropriate to remark that the plea agreement contained a waiver-of-appeal provision, which stated in pertinent part that if the district court "accepts this agreement and sentences the defendant according to its terms, conditions, and recommendations, the defendant waives and surrenders the right to appeal the judgment and sentence in this case." At the disposition hearing, the district court referred to this provision and suggested that it operated to limit any appeal to "the correctness of the exercise of my discretion to sentence [the defendant] to the higher end of the guidelines." We do not agree.

The plea agreement states that if the district court placed the defendant in CHC I, II, or III, he could "request a sentence of imprisonment at the lower end of the applicable guideline range" and in that event, the government would "request a sentence of imprisonment of 70 months." The district court placed the defendant in CHC III, but nonetheless eschewed the 70-month sentencing recommendation and imposed a stiffer sentence.

Plea agreements should be given their plain meaning. Under the unambiguous language of the plea agreement in this case, the district court's rejection of the sentencing recommendation vitiated the waiver-of-appeal provision in its entirety. See United States v. Murphy-Cordero, 715 F.3d 398, 400 (1st Cir. 2013).

-4-

Consequently, that provision does not operate to circumscribe the defendant's appellate rights in any way.  See id.

With this preface, we turn to the defendant's flagship contention: that the district court's failure to advise him that his federal sentence would run consecutively to his undischarged local sentence renders his guilty plea invalid.  This omission, he says, denotes that his plea was neither knowing nor voluntary because had he been aware that the court intended to impose a consecutive sentence, "he may have insisted on proceeding to trial."  Appellant's Br. at 14.

This contention is raised for the first time on appeal. Accordingly, our review is for plain error.  See United States v. Vonn, 535 U.S. 55, 58-59 (2002); United States v. Ramos-Mejía, ___ F.3d ___, ___ (1st Cir. 2013) [No. 12-1738, slip op. at 3].  Plain error is a redoubtable standard of review; to surmount it a defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

It would serve no useful purpose to do a full-dress plain error analysis here.  After all, it is clear beyond any hope of contradiction that the defendant must, at a bare minimum, show a reasonable probability that but for some error, he would not have

-5-

pleaded guilty.  See United States v. Davila, 133 S. Ct. 2139, 2147 (2013); United States v. Dominquez Benitez, 542 U.S. 74, 83 (2004). There was no error here.

A defendant's guilty plea must be voluntary, knowing, and intelligent.  See Ramos-Mejía, ___ F.3d at ___ [slip op. at 4]; United States v. Negrón-Narváez, 403 F.3d 33, 36 (1st Cir. 2005). This means that a defendant must be informed of the "direct" consequences of his plea.  See Brady v. United States, 397 U.S. 742, 748, 755 (1970).  Nevertheless, a defendant need not be informed of all the collateral consequences of a guilty plea.  See Steele v. Murphy, 365 F.3d 14, 17 (1st Cir. 2004).  In this setting, the distinction between a direct consequence and a collateral consequence "turns on whether the consequence represents a definite, immediate, and largely automatic effect on the range of a defendant's punishment."  Id. (internal quotation marks omitted).

Before us, the defendant concedes — as he must — that the decision about whether to impose a concurrent or consecutive sentence normally lies within the district court's discretion.[1] See 18 U.S.C. § 3584(a) (explaining that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged

---

[1] There are circumstances in which the imposition of a consecutive sentence is obligatory.  See, e.g., 18 U.S.C. § 924(c)(1)(D)(ii) (mandating consecutive sentence for certain firearm offenses); Id. § 1028A(b)(2) (mandating consecutive sentence for certain aggravated identity theft offenses); see also Abbott v. United States, 131 S. Ct. 18, 23 (2010).  This case does not involve any such circumstances.

term of imprisonment, the terms may run concurrently or consecutively"); see also United States v. Carrasco-de-Jesús, 589 F.3d 22, 27 (1st Cir. 2009). This discretion is broad and, at the time of the plea, it was anybody's guess whether the district court would opt to impose the sentence concurrently or consecutively. Because a consecutive sentence was neither automatic nor definite in the circumstances of this case, it was not a direct consequence of the defendant's guilty plea. Therefore, the district court had no obligation to inform the defendant, at the change-of-plea hearing, about the possibility that a consecutive sentence might be imposed. See United States v. Hernandez, 234 F.3d 252, 256 (5th Cir. 2000).

In an effort to blunt the force of this reasoning, the defendant asserts that the district court was laboring under the mistaken impression that it had no choice but to impose a consecutive sentence. Building on this foundation, the defendant argues that the consecutive sentence was a direct consequence of his guilty plea. But as we explain below, the record is pellucid that the district court did not labor under any such misimpression. Thus, we need not grapple with the theoretical possibility that a sentencing court's mistaken belief in the inevitability of a consecutive sentence suffices to transmogrify a collateral consequence into a direct consequence.

At the disposition hearing, defense counsel urged the court to take into account the fact that the undischarged local sentence arose out of the operations of the same conspiracy that was charged in the federal case. The court flatly rejected this exhortation, observing that "[t]hese are different cases in different jurisdictions." The court went on to explain that it would not impose a concurrent sentence because the undischarged local sentence involved "a different crime." This explanation indicates to us that the district court imposed a consecutive sentence because it viewed such a sentence as warranted — not because it thought that it had no other choice.

Relatedly, the defendant hints that the district court should have, in the exercise of its discretion, imposed a concurrent rather than a consecutive sentence. Any such argument is waived: in response to the court's statement at the disposition hearing that it did not intend to impose a concurrent sentence, defense counsel repeatedly declared, "I'm not asking for that." Waiver is the purposeful relinquishment of a known right, see United States v. Olano, 507 U.S. 725, 733 (1993); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002), and that is precisely what occurred here.

This brings us to the defendant's claims of procedural error in the construction of his sentence. Because the defendant did not raise any of these claims below, review is limited to plain

error.  See Murphy-Cordero, 715 F.3d at 401; Duarte, 246 F.3d at 60.  Plain error is plainly absent here.

In formulating a sentence, a district court is required to consider an amalgam of factors set out in 18 U.S.C. § 3553(a).[2] See, e.g., United States v. Quiñones-Medina, 553 F.3d 19, 26 (1st Cir. 2009); United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008).  The defendant first asserts that the district court erred in failing to address these factors.  This assertion lacks force.

We have never required that sentencing courts undertake "an express weighing of mitigating and aggravating factors." United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012). By the same token, we have never mandated that each section 3553(a) factor be mentioned separately by the sentencing court.  See id.; United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).

---

[2] The sentencing factors set out in 18 U.S.C. § 3553(a) include, as pertinent here:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant . . . ; (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;] (6) the need to avoid unwarranted sentence disparities among defendants with similar records . . . .

Instead, we have taken a pragmatic approach and recognized that "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc).

The record in this case makes manifest that the district court considered the relevant section 3553(a) factors. The court exhibited an intimate knowledge of the contents of the PSI Report and trenchantly discussed the nature and circumstances of the offense of conviction. The court likewise displayed great familiarity with the defendant's criminal history, discussing in detail prior charges that had been lodged against him. Last — but far from least — the court gave individualized consideration to the defendant's situation and articulated its reasons for choosing the imposed sentence. No more was exigible.

The defendant's plaint that the district court neglected sufficiently to explain its reasoning for the sentence is largely refuted by what we have already written.

The court's explanation, though inelegant, was adequate, particularly since the sentence fell within the GSR. Although the GSR is not controlling with respect to the reasonableness of a specific sentence, see United States v. Gates, 709 F.3d 58, 71 (1st Cir. 2013); Jiménez-Beltre, 440 F.3d at 517-18, the fact that a sentence falls within a properly calculated guideline range is

pertinent to the requisite degree of explanation: a within-the-range sentence usually demands a less detailed explanation than a variant sentence. See United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011); United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006). Where, as here, a district court offers a plausible rationale in support of a within-the-range sentence, "it need not wax longiloquent." Murphy-Cordero, 715 F.3d at 402.

The defendant makes a last-ditch argument that the court below erred in sentencing him at the top of the GSR based on unsupported facts regarding prior local charges that were ultimately dismissed. Specifically, the defendant takes issue with the court's suggestion that his CHC underrepresented the extent of his past criminal conduct.

The Federal Rules of Evidence do not apply in sentencing proceedings. See United States v. Zapata, 589 F.3d 475, 485 (1st Cir. 2009). A district court may ground sentencing determinations on any evidence that it reasonably deems to be reliable. See United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010). Here, the defendant did not object to any aspect of the PSI Report's discussion of local charges against him that were ultimately dismissed. When a fact is set out in a presentence investigation report and is not the subject of a timely objection, the district court may treat the fact as true for sentencing purposes. See United States v. Medina, 167 F.3d 77, 81 (1st Cir.

-11-

1999); <u>United States</u> v. <u>Rosales</u>, 19 F.3d 763, 770 (1st Cir. 1994). That is exactly what the district court did in this case. We descry no error in the court's reliance on this information. <u>See</u> <u>United States</u> v. <u>Flores-Machicote</u>, 706 F.3d 16, 21 (1st Cir. 2013) (explaining that "a sentencing judge may consider whether a defendant's criminal history score substantially underrepresents the gravity of his past conduct" and a "record of past arrests or dismissed charges may indicate a pattern of unlawful behavior" (internal quotation mark omitted)).

We need go no further. For the reasons elucidated above, we uphold both the defendant's conviction and his sentence.

**<u>Affirmed</u>.**