# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 22-3014**

**September Term, 2023**

FILED ON: APRIL 30, 2024

UNITED STATES OF AMERICA,
　　　　　APPELLEE

v.

MAURICE KERRICK, JR.,
　　　　　APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00111-1)

Before: RAO and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was presented to the court and briefed and argued by counsel. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

## I. Introduction

Maurice Kerrick appeals the district court's revocation of his supervised release and the two-year custodial sentence that followed. He argues the district court violated his rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States by failing to notify him at sentencing that his sentence entailed the possibility of additional prison time were he to violate a condition of his supervised release. Kerrick also argues the two-year sentence imposed upon revocation of his supervised release violates his rights under the Fifth and Sixth Amendments because it would result in a total sentence greater than the five-year, statutory-maximum sentence for the crime of which he was convicted. Because we hold that Kerrick's constitutional rights were not violated, we affirm the judgment of the district court.

## II. Background

In 2007, Maurice Kerrick was indicted on various drug and weapons charges. He entered into an agreement whereby he would plead guilty to one count of unlawful possession with intent to distribute cannabis, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(D). At the plea hearing, the district court notified Kerrick that, under the plea agreement, he could be sentenced up to the statutory maximum term of five years to be followed by a term of supervised release. During the plea colloquy, the court asked Kerrick if there was "anything about the potential penalty in this case resulting from this plea and conviction" that he was "unclear about," but the court did not explain to Kerrick that he could be subject to prison time were he to violate any of the conditions of his supervised release. The district court ultimately sentenced Kerrick to the statutory-maximum five years in prison, followed by three years of supervised release. One of the conditions of Kerrick's supervised release was that he not "possess a firearm" nor "commit any other federal, state, or local crime."

A few months after Kerrick was released from custody, having served his five-year sentence (and a consecutive state sentence) and begun his term of supervised release, he was arrested and ultimately pleaded guilty in the Superior Court for the District of Columbia to first degree burglary and possession of a firearm during a crime of violence. The United States Probation Office petitioned the district court for revocation of Kerrick's supervised release. In the revocation proceeding, Kerrick argued that, because he had already received and served the statutory maximum five-year sentence for the original offense to which he had pleaded guilty, he could not be sentenced to an additional term of imprisonment for violating a condition of his supervised release. Kerrick's challenge to the revocation of his supervised release comprised three constitutional arguments: He was denied due process because he did not receive adequate notice of the potential for imprisonment if he violated a condition of his supervised release; being sentenced to a term of imprisonment for violating a condition of his supervised release would run afoul of the Double Jeopardy Clause of the Fifth Amendment; and the revocation proceeding being conducted solely by the court without a jury violated his rights under the Fifth and Sixth Amendments, as explicated in *United States v. Haymond*, 139 S. Ct. 2369 (2019), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The district court rejected Kerrick's arguments on the ground that the revocation of supervised release is but a collateral consequence of a guilty plea, and therefore the Due Process Clause does not require that the defendant be informed about it. The court also held Kerrick's being sentenced for violating a condition of supervised release did not violate the Double Jeopardy Clause because Kerrick had no legitimate expectation of finality in his sentence and because imprisonment for violating a condition of supervised release was "part of the penalty for the initial offense" rather than an unconstitutional second punishment.

The district court rejected Kerrick's Fifth and Sixth Amendment challenges under *Haymond* and *Apprendi* for three reasons: "[V]iolation of supervised release is not a separate fact creating an additional penalty on top of a defendant's original sentence that may go beyond the statutory maximum"; even assuming *Haymond* and *Apprendi* applied, Kerrick's case would come under

2

the exception in *Apprendi* for the fact of a prior conviction; and Kerrick had admitted that his D.C. offenses qualified as violations of the conditions of his supervised release, wherefore that fact did not need to be proved to a jury beyond a reasonable doubt. The court then revoked Kerrick's supervised release and sentenced him to 24 months in prison.

### III. Standard of Review

Because the issues presented by this appeal are purely legal, our review is de novo. *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019).

### IV. Analysis

On appeal, Kerrick argues the district court erred in holding that revocation of supervised release is a collateral rather than a direct consequence of a guilty plea, and therefore not covered by the due process notice requirement. He also renews his argument that a two-year sentence, in addition to the five-year statutory maximum sentence he had already served, violates the Double Jeopardy Clause and his Fifth and Sixth Amendment rights under *Haymond* and *Apprendi*. Assuming that Kerrick's challenges are procedurally appropriate, *but see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *United States v. Sanchez*, 891 F.3d 535, 538 (4th Cir. 2018) – upon which we offer no opinion – Kerrick's arguments fail on the merits.

"Engrained in our concept of due process is the requirement of notice." *Lambert v. California*, 355 U.S. 225, 228 (1957). Due process requires that a defendant entering a plea of guilty be "fully aware of the direct consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). This requirement, however, "exclude[s] *collateral* consequences" of a plea. *United States v. Sambro*, 454 F.2d 918, 922 (D.C. Cir. 1971); *United States v. Ocasio-Cancel*, 727 F.3d 85, 89 (1st Cir. 2013) ("a defendant need not be informed of all the collateral consequences of a guilty plea"). "Whether a consequence of a plea is direct or collateral depends upon whether the undesired consequence is definite, immediate, and largely automatic." *United States v. Salerno*, 66 F.3d 544, 551 (2d Cir. 1995) (cleaned up); *Ocasio-Cancel*, 727 F.3d at 89.

A term of imprisonment following revocation of supervised release, like the revocation of probation, is a collateral consequence of the plea because it is not definite, immediate, or largely automatic. *United States v. Lewis*, 519 F.3d 822, 825 (8th Cir. 2008) (holding the sentence imposed after revocation of supervised release is a collateral consequence of a guilty plea); *Parry v. Rosemeyer*, 64 F.3d 110, 117 (3d Cir. 1995) ("sentencing judge was not constitutionally required to explain in detail the potential effects of probation, including that if it is violated, a prison sentence . . . can be imposed"); *cf. Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977) ("revocation of parole is a collateral rather than a direct consequence of a defendant's guilty plea").

Kerrick relies upon the recent case of *United States v. King*, 91 F.4th 756 (4th Cir. 2024).

3

There the Fourth Circuit addressed a challenge to a guilty plea under Rule 11 based upon the district court's failure to advise the defendant about the significance of a term of supervised release. *Id.* at 759–60. Building upon Fourth Circuit precedent regarding special parole, the court held that "Rule 11 mandate[d] that the district court advise a defendant who intends to plead guilty of the effect of supervised release." *Id.* at 762. The Fourth Circuit declined to vacate the defendant's guilty plea, however, because "the record did not show that he would have declined to plead guilty if he had been advised about the significance of supervised release." *Id.* at 762 (cleaned up).

We need not decide today whether Rule 11 indeed requires a district court to advise a defendant of the significance of violating a condition of supervised release. Kerrick raises a due process challenge rather than a challenge under Rule 11; although the rule "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary," the "procedure embodied in Rule 11 has not been held to be constitutionally mandated." *McCarthy v. United States*, 394 U.S. 459, 465 (1969). The district court was under no constitutional obligation, therefore, to inform Kerrick of the potential consequences of violating the conditions of his supervised release, including the potential for a term of imprisonment.

Kerrick's arguments under *Haymond* and *Apprendi* are likewise unavailing. *Apprendi* and its progeny do not apply to the revocation of supervised release, as is made clear in Justice Breyer's controlling opinion in *United States v. Haymond*, 139 S. Ct. 2369, 2385 (2019) ("in light of the potentially destabilizing consequences, I would not transplant the *Apprendi* line of cases to the supervised-release context"). Even assuming *Apprendi* applied, however, it would be of no use to Kerrick: A fact admitted by the defendant need not be found by a jury, *id.* at 2377 (plurality opinion), and Kerrick has admitted that his D.C. offenses qualified as violations of the conditions of his supervised release.

Finally, Kerrick's Double Jeopardy argument fails because he lacked a legitimate expectation of finality in his sentence. "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980). We have therefore held that "the application of the Double Jeopardy Clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sentence." *United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) (cleaned up). For example, "there is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *DiFrancesco*, 449 U.S. at 137. So, too, with the imposition of punishment pursuant to revocation of supervised release. Far from a second punishment, "supervised release punishments arise from and are treated as part of the penalty for the initial offense." *Haymond*, 139 S. Ct. at 2379–80 (cleaned up). Therefore, at sentencing, a defendant has at least constructive knowledge that a term of imprisonment is a potential consequence for violating a condition of supervised release, and he has no legitimate expectation of finality in a sentence subject to a term of supervised release. *See Fogel*, 829 F.2d at 87 ("a defendant has a legitimate expectation in the finality of a sentence unless he is or should be aware at sentencing that the sentence may permissibly be increased").

4

## V. Summary and Conclusion

The punishment for violating a condition of supervised release is part of the penalty for the offense of conviction. Accordingly, imposition of a term of imprisonment for violating a condition of supervised release does not trigger the Double Jeopardy clause, nor does it violate the Fifth Amendment. Because a possible supervised release punishment is a collateral rather than a direct consequence of a guilty plea, due process does not require that a defendant be informed about it.

Although not constitutionally required, we think the better practice is for the district court in future sentencing proceedings to inform the defendant that violating a condition of supervised release may subject him or her to an additional sentence beyond the statutory maximum for the crime underlying his or her conviction. The burden on the court will be trivial, whilst the benefit to the community in terms of additional deterrence may be substantial.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

### Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

5